1
2
3                    **UNITED STATES DISTRICT COURT**
4                  **NORTHERN DISTRICT OF CALIFORNIA**
5                        **SAN JOSE DIVISION**
6
7   GILBERT RILEY,                          Case No.  22-cv-03871-BLF
8                    Plaintiff,
9          v.                               **ORDER DENYING PETITION TO
                                            VACATE ARBITRATION AWARD;
10  QUANTUMSCAPE CORP.,                     GRANTING CROSS-MOTION TO
                                            CONFIRM ARBITRATION AWARD**
11                   Defendant.
                                            [Re:  ECF Nos. 17, 27]
12
13          Before the Court are Petitioner Gilbert Riley's petition to vacate and Respondent

14  QuantumScape Corporation's (QuantumScape) cross-motion to confirm the arbitration award

15  issued in *Gilbert Riley v. QuantumScape Corp.*, Case No. 1100110944 (JAMS) (the

16  "Arbitration").  Riley Mot., ECF No. 17; QS Mot., ECF No. 28.  Both parties filed replies.  Riley

17  Reply, ECF No. 30; QS Reply, ECF No. 31.  The Court has considered the parties' papers,

18  relevant legal authority, and the record in this case, and for the reasons set forth below, the Court

19  DENIES the petition to vacate and GRANTS the cross-motion to confirm the arbitration award.

20  **I.      BACKGROUND**

21          **A.      Commencement of Arbitration**

22          On February 26, 2021, Gilbert Riley initiated an arbitration against his QuantumScape

23  after QuantumScape terminated his employment.  Decl. of David Marek Supp. Pet. to Vacate

24  Arbitration Award ("Marek Decl.") Ex. 2, at 1-2 ("Arb. Demand"), ECF No. 2-2.  Riley sought to

25  recover shares or the value of shares in QuantumScape of which he was allegedly deprived after

26  his termination.  *Id.* at 9.  The arbitration commenced on June 15, 2021, and Hon. Wynne Carvill

27  (Ret.) was appointed as Arbitrator shortly thereafter.  Marek Decl. Exs. 4-5, ECF Nos. 2-4, 2-5.

28

*United States District Court*
*Northern District of California*

United States District Court
Northern District of California

1

### B.    Demurrer

On August 25, 2021, the Arbitrator issued a case management order in which he granted QuantumScape leave to file a dispositive motion.  Marek Decl. Ex. 6 § 7, ECF No. 2-6. QuantumScape subsequently filed a demurrer, and the Arbitrator held a hearing on October 27, 2021.  *See* Marek Decl. Ex. 9 ("Demurrer Order") at 1, 3, ECF No. 2-9.  Attorneys David Marek and Ami Sanghvi appeared on behalf of Riley, and Attorneys Marina Tsatalis and Matthew Gorman appeared on behalf of QuantumScape.  *Id.* at 1-2.

The arbitrator issued an order on the demurrer on November 1, 2021.  *Id.*  The Arbitrator construed Riley's Arbitration Demand as asserting three claims: breach of contract, breach of the covenant of good faith and fair dealing, and fraud in the inducement.  *Id.* at 3.  The Arbitrator sustained the demurrer without leave to amend as to the breach of contract claim and with leave to amend as to the other two claims.  *Id.* at 12.

### C.    Denial of Request to File Motion for Summary Judgment

On February 16, 2022, the Arbitrator issued a case management order in which he denied QuantumScape's request to file a motion for summary judgment.  *See* Marek Decl. Ex. 12, ECF No. 2-12.  The arbitrator noted that a motion for summary judgment may be defeated by one material dispute of fact and that such a dispute was "entirely possible" given that one of the remaining claims was for fraud.  *Id.* § 7.  The arbitrator also noted that "arbitrations are supposed to offer a more efficient and cost-effective means for adjudicating cases than the traditional judicial system" and determined that "[t]his factor suggests that more than one dispositive may be excessive."  *Id.*  The arbitrator stated that this factor was "particularly significant" because the arbitration clause provided that the prevailing party may be able to recover fees.  *Id.*  The arbitrator also stated that he was skeptical that QuantumScape had shown that the proposed motion was likely to succeed.  *Id.*

### D.    Hearing and Partial Final Award

The virtual hearing for the arbitration was conducted from March 29 through 31, 2022, and the Arbitrator issued a Partial Final Award on April 1, 2022.  *See* Marek Decl. Ex. 4 ("Partial Final Award"), at p.2, ECF No. 2-14.  The Arbitrator held that Riley had not proven his claims for

fraud in the inducement and breach of the covenant of good faith and fair dealing.  *See id.* at 8, 11.

The Arbitrator also set a briefing schedule for the bifurcated issue of attorney's fees and costs.  *Id.*

at 11.

> **E.     Fees Motion and Discovery of Earlier Submission of Mr. Gorman's Out-of-State
> Attorney Arbitration Counsel Application**

QuantumScape moved for fees and costs, and Riley opposed.  *See* Marek Decl. Ex. 15

("Fees Mot."), ECF No. 2-15; Marek Decl. Ex. 16 ("Fee's Opp'n"), ECF No. 2-16.  Riley argued,

among other things, that QuantumScape was not entitled to collect attorney's fees for Mr. Gorman

because he was an out-of-state attorney not licensed to practice in California.  Fees Opp'n 8-9.

On May 9, 2022, three days after Riley filed his opposition, Terri Benson, a JAMS case

manager uploaded a document titled "OSAAC Document – Gorman.pdf" to the case's online

docket on JAMS Access.  Marek Decl. Ex. 17, ECF No. 2-17; *see also* Marek Decl. Ex. 13

("Pretrial Conference Order") § 3 (identifying Terri Benson as JAMS case manager).  A day later,

another case manager, Scott Schreiber, emailed the parties on behalf of the Arbitrator.  Marek

Decl. Ex. 18, ECF No. 2-18.  The email stated in relevant part:

> I read the application for fees and Claimant's opposition. I noted the
> issue raised in the opposition regarding out-of-state attorneys needing
> to apply to an arbitrator for permission to appear. I remembered
> signing such an application earlier this year. I looked at this case and
> several others in Access where out-of-state attorneys have appeared
> in arbitrations before me. I did not see a signed application in any of
> these arbitrations. I asked my case managers if they recalled one.
> They reported to me that Mr. Gorman had filed one. I instructed them
> that any such application needed to be in the case file on Access. In
> response to that, Mr. Gorman's was uploaded yesterday by staff.

*Id.*  The Arbitrator added that "given some of the issues raised, it is challenging to rule on

individual attorney hours without information as to the hours each attorney devoted to each of the

major tasks in the application or the date such services were rendered."  *Id.*

That day, Riley's counsel exchanged emails with Mr. Schreiber.  Marek Decl. Ex. 20, ECF

No. 2-20.  Mr. Schreiber forwarded Riley's counsel an email that Mr. Gorman had sent to Mr.

Schreiber almost two months earlier, on March 15, 2022.  The forwarded email showed that Mr.

Gorman asked Mr. Schreiber to forward his out-of-state attorney application to the Arbitrator and

that Mr. Schreiber replied asking Mr. Gorman to "please resend this email and copy opposing

1    Counsel" but then sent another email the same day telling Mr. Gorman to disregard the request.

2    *Id.* at 4.

3    Mr. Schreiber explained to Riley's counsel that he ultimately "retracted" his request that

4    Mr. Gorman resend the email because he "believed that since this was an administrative matter, it

5    didn't need to be sent to all Counsel before [he] provided it to the Arbitrator for signature." *Id.* at

6    2.

7    On May 18, 2022, QuantumScape filed its reply in support of its motion for fees. Marek

8    Decl. Ex. 21, ECF No. 2-21. In its reply QuantumScape stated that it had "supplemented this

9    Motion with the applicable invoices for the Arbitrator's *in camera* review." *Id.* at 9. That day,

10   QuantumScape emailed the Arbitrator *ex parte* stating that it was providing invoices for *in camera*

11   review. Marek Decl. Ex. 28, at 3, ECF No. 2-28.

12   The next day, Ms. Benson replied to QuantumScape's email stating that the Arbitrator

13   would only review submissions shared with all counsel. *Id.* at 1. That same day Riley opposed

14   the supplementation, noting that QuantumScape had not requested permission for any such *ex*

15   *parte* supplementation or notified Riley in advance of its submission. Marek Decl. Ex. 22, ECF

16   No. 2-22. Also that same day, the Arbitrator also posted a message to JAMS Access instructing

17   that "all communications from any party to [him] should be via documents uploaded onto Access

18   or this portal, which ensures there is no ex parte communication." Marek Decl. Ex. 24, at 2, ECF

19   No. 2-24. The Arbitrator also stated that he "gather[ed] from [his] Case Manager that

20   Respondent's counsel submitted unredacted invoices" but that he "did NOT look at them." *Id.*

21   The Arbitrator added that "[i]f a party wants to submit something for in camera review, that party

22   must seek permission by filing a request and serving it on opposing counsel so it is transparent"

23   and that he would rule on such a request after the opposing party has had a chance to respond. *Id.*

24   Finally, the Arbitrator instructed the Case Manager to upload to JAMS Access any emails sent to

25   the Arbitrator or Case Manager that did not copy opposing counsel. *Id.*

26   On May 23, 2022, Ms. Benson uploaded a folder called "2022.05.23 Emails" to JAMS

27   Access. Marek Decl. Ex. 26, ECF No. 2-26. Shortly thereafter, counsel for Riley wrote Ms.

28   Benson stating that he believed the folder was incomplete to the extent that it purported to contain

United States District Court
Northern District of California

4

all emails between JAMS Case Managers and counsel on either side.  Marek Decl. Ex. 27, ECF No. 2-27.  Counsel for Riley identified two omissions that he believed showed the folder to be incomplete.  *Id.*

On June 2, 2022, Ms. Benson uploaded another collection of emails between counsel and JAMS and the arbitrator.  Marek Decl. ¶ 75.  Ms. Benson's cover letter to the submission noted that one of the omissions identified by Riley's counsel was, in fact, in the prior production.  Marek Decl. Ex. 29, ECF No. 2-29.  The cover letter stated that it was providing the emails as a courtesy and was making no representation that the collection of emails was exhaustive.  *Id.*

### F.   Fees Decision

Also on June 2, 2022, the Arbitrator issued the Decision on Fees & Costs.  Marek Decl. Ex. 30 ("Fees Decision"), ECF No. 2-30.  Regarding QuantumScape's *ex parte* submission of invoices, the Arbitrator explained:

> There has been some back and forth regarding *ex parte* communications. To be clear, the Arbitrator has not looked at anything from either party unless it has been uploaded onto Access. While there was an attempt to submit some billing material for *in camera* review, there was no application filed seeking such permission, which, if that had been done, the other side could have opposed or sought the imposition of some conditions.

*Id.* at 3 n.1.

The Arbitrator also addressed Riley's opposition to QuantumScape's attempt to collect fees for Mr. Gorman.  *Id.* at 4.  The Arbitrator determined that the law permitted recovery of fees for non-admitted attorneys unless and until they appear.  *Id.* at 4.  The Arbitrator found that Mr. Gorman first appeared on October 27, 2021, when he presented oral argument on QuantumScape's demurrer.  *Id.*  The Arbitrator found that this appearance rendered Mr. Gorman's billings uncollectable from that date through the date of his compliance with California's Out-of-State Attorney Arbitration Counsel ("OSAAC") program.  *Id.*  According to the Arbitrator, Mr. Gorman came into "substantial compliance" with the program on March 15, 2022, when the Arbitrator approved his application.  *Id.*  The Arbitrator noted that "it is arguable that [Mr. Gorman] was still not incompliance [*sic*]" on that date "due to his apparent failure to serve either the initial application or the Arbitrator's approval on opposing counsel in accordance with C.C.P. section

1013a." *Id.* The Arbitrator acknowledged that "[t]his failure to follow the explicit requirements of the OSAAC program deprived [Riley] of the opportunity to oppose the application." *Id.* at 4 n.3. But the Arbitrator found that "it [was] unlikely the application would have been opposed and, more importantly, the Arbitrator would have overruled any objection because Mr. Gorman was and is obviously qualified to be admitted under that program." *Id.*

The Arbitrator ultimately held that "the fees of Matthew Gorman from October 27, 2021, through March 15, 2022, are not recoverable under California law" and deducted $155,370 from QuantumScape's request as a result. *Id.* at 4. The Arbitrator added to the award an additional $20,000 for "fees on fees." *Id.*

### G. Riley's Additional Requests for Communications

Two days after the Arbitrator issued the Fees Decision, Riley uploaded a letter to JAMS Access. *See* Marek Decl. ¶ 78; *see also* Marek Decl. Ex. 31, ECF No. 2-31. The letter objected to the June 2, 2022, production of emails as incomplete based on Ms. Benson's cover letter, which noted that it was making "no representation that the attached collection is exhaustive." *Id.* at 1. That, day, JAMS General Counsel, Sheri Eisner, responded. Marek Decl. Ex. 33, ECF No. 2-33. She stated that "[a]s a courtesy, JAMS has provided to the parties copies of various emails requested by counsel for Claimant" and that "JAMS will provide nothing further at this time in response to [Riley's] requests." *Id.*

### H. Final Award

On June 15, 2022, the Arbitrator issued a Final Award. *See* Marek Decl. Ex. 34 ("Final Award"), ECF No. 2-34. The Final Award confirmed the holding of the Partial Final Award that Riley had failed to prove his claims. *Id.* at 15. It also confirmed that QuantumScape was entitled to fees and costs. *Id.* at 15. Like the Fees Decision, the Final Award deducted $155,370 from QuantumScape's requested amount for Mr. Gorman's work on the case from October 27, 2021, through March 15, 2022, and added $20,000 for "fees on fees." *Id.* at 13.

Riley now asks the Court to vacate of the Final Award on two bases: (1) the Arbitrator exhibited bias and (2) the Arbitrator's Final Award manifestly disregarded the law. *See* Pet. 11-25. QuantumScape opposes and cross-moves for confirmation of the arbitration award. *See*

1  Cross-Mot.

2  ## II.   DISCUSSION

3  ### A.   Federal Arbitration Act (FAA) or California Arbitration Act (CAA)

4  The parties dispute whether their competing motions are governed by the Federal

5  Arbitration Act ("FAA") or California Arbitration Act ("CAA").  For the reasons discussed below,

6  the Court finds that the award should be reviewed under the FAA.

7  #### 1.   Legal Standard for Determining Whether the FAA or CAA Governs the Court's Review

8  "When an agreement falls within the purview of the FAA, there is a 'strong default

9  presumption . . . that the FAA, not state law, supplies the rules for arbitration.'"  *Johnson v.*

10 *Gruma Corp.*, 614 F.3d 1062, 1066 (9th Cir. 2010) (quoting *Sovak v. Chugai Pharm. Co.*, 280

11 F.3d 1266, 1269 (9th Cir. 2002)).  "To overcome that presumption, parties to an arbitration

12 agreement must evidence a 'clear intent' to incorporate state law rules for arbitration."  *Fid. Fed.*

13 *Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1311 (9th Cir. 2004) (quoting *Sovak*, 280 F.3d at

14 1269).

15 A general choice-of-law clause in a contract is insufficient to overcome the presumption

16 that the FAA governs.  *Johnson*, 614 F.3d at 1066.  Even general references to California law in

17 an arbitration provision are, on their own, insufficient to overcome the presumption.  *See Fid. Fed.*

18 *Bank*, 386 F.3d at 1312 (applying FAA where arbitration clause required "arbitration in

19 accordance with the laws of the State of California and the rules of the American Arbitration

20 Association").  Rather, "the parties must explicitly state their intent to incorporate California law

21 *as it relates to arbitration.*"  *ValueSelling Assocs., LLC v. Temple*, No. 09–CV–1493–JM (MDD),

22 2011 WL 2532560 at *2 (S.D. Cal. June 23, 2011), *aff'd*, 520 F. App'x 593 (9th Cir. 2013).

23 "Where the FAA's rules control arbitration proceedings, a reviewing court must also apply

24 the FAA standard for vacatur."  *Johnson*, 614 F.3d at 1067.  Conversely, "[w]here state arbitration

25 rules control arbitration proceedings, [a court] must apply the state vacatur standard."  *Id.*

26 #### 2.   Analysis

27 The Arbitration involved alleged breaches of two agreements with different arbitration

28

United States District Court
Northern District of California

1   provisions.  The first agreement, entitled "Separation and Release," provides:

2       THE ARBITRATOR SHALL ADMINISTER AND CONDUCT
        ANY ARBITRATION IN ACCORDANCE WITH CALIFORNIA
3       LAW, INCLUDING THE CALIFORNIA CODE OF CIVIL
        PROCEDURE, AND THE ARBITRATOR SHALL APPLY
4       SUBSTANTIVE AND PROCEDURAL CALIFORNIA LAW TO
        ANY DISPUTE OR CLAIM WITHOUT REFERENCE TO ANY
5       CONFLICT-OF-LAW PROVISION OF ANY JURISDICTION.

6   Marek Decl. Ex. 1 ("Separation Agreement"), at 7, ECF No. 2-1.  The second agreement, the

7   "Consulting Agreement," provides:

8       Consultant agrees that any and all controversies, claims, or disputes .
        . . arising out of, relating to, or resulting from Consultant's consulting
9       relationship with the Company or the termination of Consultant's
        consulting relationship with the Company, including any breach of
10      this Agreement, shall be subject to binding arbitration under the
        Arbitration Rules set forth in the California Code of Civil Procedure
11      Section 1280 through 1294.2, including Section 1281.8 (the "*ACT*")
        and pursuant to California law. The Federal Arbitration Act shall
12      continue to apply with full force and effect notwithstanding the
        application of procedural rules set forth in the Act.

13  Marek Decl. Ex. 1, at Ex. A ("Consulting Agreement"), at 5.

14      QuantumScape asserts, and Riley does not dispute, that the agreements fall within the

15  purview of the FAA and are therefore subject to the "strong presumption" that the FAA supplies

16  the standard for determining whether to vacate or confirm the award.  *Compare* QS Mot. 15, *with*

17  Riley Reply 1-2.  But the parties dispute whether that presumption has been overcome.

18      Riley argues that the agreements establish that both the FAA and CAA rules apply.  *See*

19  Riley Mot. 11-12; Riley Reply 1-4.  According to Riley, the Separation Agreement evidences a

20  clear intent to incorporate state law rules while the Consulting Agreement "refers to both the

21  application of the CAA . . . and the FAA."  *Id.* at 1-2.  Riley contends that "[t]he difference in

22  language in the two Agreements . . . shows that the parties expected the CAA to apply to an

23  arbitration pursuant to the Separation Agreement and the FAA to an arbitration pursuant to the

24  Consulting Agreement" and therefore "both the FAA and CAA apply."  *Id.*

25      QuantumScape argues that the agreements establish that the FAA rules apply.  QS Mot. 14.

26  QuantumScape notes that the Separation Agreement does not say that California law or the CCP

27  should apply to proceedings to confirm or vacate the Final Award, while the Consulting

28  Agreement states that "[t]he Federal Arbitration Act shall continued to apply with full force and

8

effect notwithstanding the application of procedural rules set forth in the [California Arbitration Act]." *Id.* at 15.  QuantumScape argues that this language "clearly preserv[es] the applicability of the FAA to disputes arising under the Consulting Agreement." *Id.*  According to QuantumScape, this shows the parties' clear intent for the FAA to apply to proceedings related to the arbitration. *Id.*  QuantumScape further argues that Riley waived his right to argue vacatur under the CAA by failing to object to the Arbitrator's application of the FAA throughout the arbitration.  *Id.* at 17.

The parties appear to agree that the Consulting Agreement, standing alone, shows the parties intent for the FAA to apply to proceedings related to an arbitration.  But they disagree about whether the Separation Agreement requires application of the CAA.  The Court therefore analyzes the arbitration provision of the Separation Agreement.

The Ninth Circuit has articulated the boundaries for determining whether the FAA or CAA supplies the rules for arbitration.  "A general choice-of-law clause within an arbitration provision does not trump the presumption that the FAA supplies the rules for arbitration." *Sovak*, 280 F.3d at 1270.  But a clause requiring the arbitration to be "conducted and subject to enforcement pursuant to the provisions of California Code of Civil Procedure sections 1280 through 1295, or other applicable law" requires application of the CAA vacatur standard.  *Johnson*, 614 F.3d at 1067.  The clause at issue here falls somewhere in between a "general choice-of-law clause" and a clause that expressly mentions the sections of the CCP that comprise the CAA.  It specifies that the arbitrator will administer the arbitration in accordance with the CCP and will apply procedural California law, but it does not mention the sections of the CCP that comprise the CAA.  *See* Separation Agreement 7.  The Court therefore analyzes whether this general reference to the CCP overcomes the strong presumption that the FAA, not state law, supplies the rules for arbitration. *See Sovak*, 280 F.3d at 1269.

Interpreting the boundaries established by Ninth Circuit precedent, a court in this Circuit explained that parties seeking to overcome the strong presumption that the FAA supplies the rules for arbitration "must explicitly state their intent to incorporate California law *as it relates to arbitration.*"  *ValueSelling*, 2011 WL 2532560, at *2 (emphasis in original).  The provisions at issue in *ValueSelling* stated:

1

2

> [1] This Agreement is executed pursuant to, intended to be performed under, and shall be governed in its interpretation and effect by the laws of the State of California.

3

> [2] This Agreement is entered into in San Diego, California and shall be governed for all purposes by the laws of California.

4

5

6

7

> [3] This Agreement shall be governed by and construed in accordance with the laws of the State of California. Any dispute, controversy, or question arising under, out of, or relating to this Agreement . . . shall be submitted to the American Arbitration Association ("AAA") for arbitration in the State of California in San Diego, California. The proceeding shall be governed by the AAA Commercial Rules then in effect.

8    *Id.* at *2. The court held that the presumption of applying the FAA stands because "[n]one of the

9    arbitration clauses make explicit reference to the CAA or the application of California law

10   specifically in the context of arbitration." Under this standard, the terms of the Separation

11   Agreement do not overcome the presumption that the FAA applies because a reference to the CCP

12   is not a reference to the CAA or California law specifically in the context of arbitration.

13          The Ninth Circuit's analysis in *Fidelity Federal Bank* confirms the conclusion that the

14   FAA rules apply to the Separation Agreement. There, the Ninth Circuit reviewed the following

15   arbitration clause to determine whether its vacatur analysis would be governed by federal or state

16   law:

17

18

> Disputes or controversies shall be submitted to and resolved by binding arbitration in accordance with the laws of the State of California and the rules of the American Arbitration provision.

19   386 F.3d at 1312. The Court held that the requirement that the arbitration be conducted

20   accordance with California law did not overcome the presumption that FAA rules govern the

21   arbitration. *Id.* This was true even though the CAA is part of California law. Like the agreement

22   at issue in *Fidelity Federal Bank* the Separation Agreement requires that the arbitration be

23   resolved ("conducted") "in accordance with" California law. Though the Separation Agreement

24   mentions the CCP, this general reference to the CCP is not specific enough to overcome the

25   presumption that the FAA applies because the CAA is only a part of the CCP, as it is only a part

26   of California law.

27          To the extent there remains any question that the FAA governs the Court's vacatur

28   analysis, the parties' conduct in arbitration resolves the matter. Riley concedes that "throughout

1   the Arbitration and in the Final Award, the Arbitrator . . . note[d] that the FAA applies to the

2   arbitration."  Riley Mot. 11.  Each of the exhibits Riley cites for support state that "[t]he Federal

3   Arbitration Act ('FAA'), 9 U.S.C. section 1 et. seq., the JAMS Employment Arbitration Rules and

4   Procedures ('Rules'), and the substantive law of the State of California[ ]apply to this arbitration."  *See*

5   Marek Decl., Exs. 6, 10, 12, 13, 34, ECF Nos. 2-6, 2-10, 2-12, 2-13, 2-34).  Riley does not contend

6   that he ever objected to this application of the FAA.  This further confirms that the Court should apply

7   the FAA's vacatur standard.  *See Johnson*, 614 F.3d at 1067 ("Where the FAA's rules control

8   arbitration proceedings, a reviewing court must also apply the FAA standard for vacatur.").

9         **B.**    **The Court Confirms the Arbitration Award Under the FAA**

10        Review of an arbitration decision is "limited and highly deferential."  *Coutee v. Barington*

11   *Capital Group, L.P.*, 336 F.3d 1128, 1132 (9th Cir. 2003) (quoting *Sheet Metal Workers' Int'l*

12   *Ass'n v. Madison Indus., Inc.*, 84 F.3d 1186, 1190 (9th Cir. 1996)).  "Neither erroneous legal

13   conclusions nor unsubstantiated factual findings justify a federal court review of an arbitral award

14   under [the FAA], which is unambiguous in this regard."  *Bosack v. Soward*, 586 F.3d 1096, 1102

15   (9th Cir. 2009) (quoting *Kyocera v. Prudential-Bache T Servs.*, 341 F.3d 987, 994 (9th Cir. 2003)

16   (*en banc*)).  Thus, when presented with an application to confirm an arbitration award, "the court

17   must grant such an order unless the award is vacated, modified, or corrected as prescribed in [9

18   U.S.C. §§ 10, 11]."  9 U.S.C. § 9.

19        Section 10 of the FAA provides the exclusive grounds for vacating an arbitration award.

20   *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008).  A court may vacate an

21   arbitration award where (1)  the award was procured by corruption, fraud, or undue means; (2)

22   there was evident partiality or corruption in the arbitrator; (3) the arbitrator was guilty of

23   misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear

24   evidence pertinent and material to the controversy; or of any other misbehavior by which the

25   rights of any party have been prejudiced; or (4) where the arbitrator exceeded his powers, or so

26   imperfectly executed them that a mutual, final, and definite award upon the subject matter

27   submitted was not made.  9 U.S.C. § 10(a).

28        Section 10(a)'s limited grounds are "designed to preserve due process but not to permit

*United States District Court*
*Northern District of California*

1    unnecessary public intrusion into private arbitration procedures." *Kyocera Corp.,* 341 F.3d at 998.

2    The burden of establishing grounds for vacating an arbitration award is on the party seeking it.

3    *See Emps. Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1489 (9th Cir.

4    1991)

5          Riley seeks vacatur of the final award under 9 U.S.C. § 10(a)(2), (3), and (4).  Riley Mot.

6    12.  Riley contends that vacatur is appropriate under Section 10(a)(2) because "the Arbitrator was

7    both biased and he withheld facts that demonstrate a reasonable impression of partiality."  Riley Mot.

8    12-13; *see also* Riley Reply 4-11.  Riley contends that vacatur is appropriate under Section 10(a)(3)

9    "because the Arbitrator engaged in misbehavior that prejudiced Riley's rights to a fundamentally fair

10   hearing" and "the Arbitrator's dealings with QS's counsel provide a basis for vacatur."  Riley Reply

11   15.  Finally, Riley contends that vacatur is appropriate under Section 10(a)(4) because the Arbitrator's

12   Final Award manifestly disregarded the law.  *See id.* at 20.

### 1.  Evident Partiality

14         Under Section 10(a)(2) of the FAA, the Court may vacate an award "where there was

15   evident partiality . . . in the arbitrator[]."  9 U.S.C. 10(a)(2).  "The burden of establishing grounds

16   for vacating an arbitration award is on the party seeking it."  *U.S. Life Ins. Co. v. Superior Nat.*

17   *Ins. Co.*, 591 F.3d 1167, 1173 (9th Cir. 2010).  "Evident partiality has been found in nondisclosure

18   cases and actual bias cases."  *Woods v. Saturn Distribution Corp.,* 78 F.3d 424, 427 (9th Cir.

19   1996) (citing *Schmitz v. Zilveti*, 20 F.3d 1043 (9th Cir. 1994)).

20         "In nondisclosure cases, vacatur is appropriate where the arbitrator's failure to disclose

21   information gives the impression of bias in favor of one party.  A reasonable impression of bias

22   sufficiently establishes evident partiality because the integrity of the process by which arbitrators

23   are chosen is at issue in nondisclosure cases."  *Id.* at 427 (internal citations omitted).  "[V]acatur of

24   an arbitration award is not required simply because an arbitrator failed to disclose a matter of some

25   interest to a party."  *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 645 (9th

26   Cir. 2010).  Instead, an arbitrator is "required to disclose only facts indicating that he 'might

27   reasonably be thought biased *against one litigant and favorable to another*.'"  *Id.* (quoting

28   *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 150 (1968)).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

In contrast, "the party alleging evident partiality [in actual bias cases] must establish specific facts which indicate improper motives." *Woods,* 78 F.3d at 427 (quoting *Kinney*, 756 F.2d at 746). "'The appearance of impropriety, standing alone, is insufficient' to establish evident partiality in actual bias cases." *Id.* (quoting *Kinney*, 756 F.2d at 746.).

Riley bases his assertion that there as evident partiality in the arbitrator on four alleged events: (1) the Arbitrator received and approved an Out-of-State Attorney Arbitration Counsel (OSAAC) application for one of QuantumScape's counsel *ex parte*; (2) QuantumScape emailed the Arbitrator documents for *in camera* review; (3) the Arbitrator issued a fees and costs award that was allegedly a result of bias; and (4) the Arbitrator allegedly would not produce a complete collection of emails between counsel and himself or his case manager. Riley Mot. 14-20. As explained below, the Court finds that none of these events shows evident partiality.

### a.  OSAAC Application

Riley argues two grounds for finding that the Arbitrator demonstrated evident partiality in his approval of the OSAAC application of Mr. Gorman, one of QuantumScape's attorneys. First, Riley contends that the arbitrator demonstrated evident partiality in failing to disclose his *ex parte* receipt and approval of the application. Second, Riley contends that the arbitrator demonstrated bias in approving the application, despite Mr. Gorman's failure to comply with OSAAC application's service requirements. The Court addresses each argument in turn.

### i.  "Nondisclosure" of Receipt and Approval of the Application

The Court begins with Riley's contention that the Arbitrator demonstrated evident partiality by failing to disclose his receipt and approval of one of Mr. Gorman's OSAAC application. *See* Riley Mot. 15-16, 18; Riley Reply 6-10.

Riley does not contend that the Arbitrator had any undisclosed relationship with QuantumScape or Gorman that would give him reason to favor QuantumScape. This case thus does not fit within any of the paradigmatic examples of nondisclosure cases, such as where "(1) an arbitrator's financial interest in the outcome of the arbitration was not disclosed to the parties, (2) a familial relationship made the arbitrator's impartiality suspect when not disclosed, [or] (3) an arbitrator's former employment by one of the parties was not disclosed." *See Pac. W. Sec., Inc. v.*

*George*, No. C-13-4260 JSC, 2014 WL 894843, at *3 (N.D. Cal. Mar. 4, 2014) (quoting *Ardalan v. Macy's Inc.,* 5:09–CV–04894 JW, 2012 WL 2503972, at *3 (N.D. Cal. June 28, 2012)) *aff'd sub nom. Pac. W. Sec., Inc. v. Joanna George*, 670 F. App'x 954 (9th Cir. 2016); *see also Arora v. TD Ameritrade*, No. 10-CV-01216 CW, 2010 WL 2925178, at *5 (N.D. Cal. July 26, 2010) ("Most of the cases in which the evident partiality of arbitrators is addressed involve allegations of a conflict of interest that existed prior to arbitration or an arbitrator's failure to disclose a business or personal relationship that could render her impartiality suspect.").

Instead, Riley asks the Court to find evident partiality based solely on the Arbitrator's acts in conducting the Arbitration. Specifically, Riley contends that the Arbitrator exhibited evident partiality when he engaged in *ex parte* communications and failed to promptly upload Mr. Gorman's OSAAC application to JAMS Access. The Court finds that while the process by which Mr. Gorman submitted his OSAAC application and the Arbitrator approved it were sloppy, the Arbitrator's actions do not create a reasonable impression that he was biased in favor of QuantumScape.

It is useful here to revisit the events of the Arbitrator's approval of Mr. Gorman's OSAAC application. On March 15, 2022, Mr. Gorman submitted his OSAAC application to the Arbitrator's case manager without copying Riley's counsel on the communication. Marek Decl. Ex. 20. Mr. Gorman's message stated in full, "Could you please forward the attached to Judge Carvill for his signature? Let me know if you need any further information." *Id.* Mr. Schreiber replied asking Mr. Gorman to "please resend this email and copy opposing Counsel" but then sent another email the same day telling Mr. Gorman to disregard the request. *Id.* at 4. The case manager presumably provided Mr. Riley's application to the Arbitrator that day, because the application reflects that the Arbitrator signed it on March 15, 2022. Marek Decl. Ex 35, at p.15. Neither the Arbitrator nor his case manager served the application on Riley or uploaded it to JAMS Access immediately after the Arbitrator signed it. Riley presents no evidence that the Arbitrator knew he was reviewing an *ex parte* matter and no evidence that Mr. Gorman intentionally deceived anyone.

On May 6, 2022, Riley filed his opposition to QuantumScape's motion for fees. Marek

1   Decl. Ex. 16.  In his opposition, Riley argued that QuantumScape was not entitled to fees for Mr.

2   Gorman because Mr. Gorman had not satisfied the requirements to appear as an out-of-state

3   attorney.  *Id.* at 8.

4           On May 9, 2022, a JAMS case manager uploaded Mr. Gorman's approved OSAAC

5   application to JAMS Access.  Marek Decl. Ex. 17.  A day later, the Arbitrator messaged the

6   parties through a JAMS case manager.  Marek Decl. Ex. 18.  The message stated in relevant part:

> I read the application for fees and Claimant's opposition. I noted the
> issue raised in the opposition regarding out-of-state attorneys needing
> to apply to an arbitrator for permission to appear. I remembered
> signing such an application earlier this year. I looked at this case and
> several others in Access where out-of-state attorneys have appeared
> in arbitrations before me. I did not see a signed application in any of
> these arbitrations. I asked my case managers if they recalled one.
> They reported to me that Mr. Gorman had filed one. I instructed them
> that any such application needed to be in the case file on Access. In
> response to that, Mr. Gorman's was uploaded yesterday by staff.

12  *Id.*  The same day the Arbitrator sent his message, a JAMS case manager provided Riley's

13  attorneys the March 15 message in which Mr. Gorman submitted his OSAAC application for

14  approval.  Marek Decl. Ex. 20.

15          Based on these facts, the Court finds there is no nondisclosure here indicating that the

16  Arbitrator "might reasonably be thought biased against [Riley] and favorable to [QuantumScape]."

17  *See Lagstein*, 607 F.3d 645.  The Arbitrator was presented with the ministerial task of signing Mr.

18  Gorman's OSAAC application.  *See N. By Nw. Prods., Inc. v. First Look Studios, Inc.*, No.

19  B219503, 2010 WL 4056851, at 4 (Cal. Ct. App. Oct. 18, 2010) (referring to an out-of-state

20  attorney certificate as "essentially a housekeeping mechanism").  The Arbitrator signed the

21  application and appears not to have thought about it again until Riley raised the issue in his fees

22  opposition.  The Arbitrator's failure to ensure that the application was uploaded to JAMS Access

23  after he signed it suggests a lack of care unbecoming of the Arbitrator, but it does not evince

24  evident partiality in favor of QuantumScape.

25          Each of the cases Riley cites finding vacatur under the FAA for "evident impartiality" are

26  inapposite because they involved situations in which the arbitrator had some relationship with one

27  of the parties that created a conflict.  *See New Regency Prods., Inc. v. Nippon Herald Films, Inc.*,

28

15

501 F.3d 1101, 1109-11 (9th Cir. 2007) (vacating arbitration award where arbitrator failed to disclose that he had accepted a high-level executive position in a film company that was negotiating to finance and co-produce a movie developed by one of the party's to the arbitration and produced by a production executive who worked for that party); *Valrose Maui, Inc. v. Maclyn Morris, Inc.*, 105 F. Supp. 2d 1118, 1123-24 (D. Haw. 2000) (vacating arbitration award where arbitrator failed to disclose discussion with an attorney for one of the parties about the possibility of the arbitrator's mediating in an unrelated legal malpractice action)[1]; *Rosenhaus v. Jackson*, No. CV-14-3154-MWF (JCGx), 2016 WL 4592180, at *6-8 (C.D. Cal. Feb. 26, 2016) (vacating arbitration award where arbitrator failed to disclose that he received additional income for his work with one of the parties).

Riley also relies on *Grabowski v. Kaiser Found. Health Plan, Inc.*, 64 Cal. App. 5th 67 (2021).  In *Grabowski*, an arbitrator joked *ex parte* with defense counsel about the plaintiff's self-representation and her inability, in the arbitrator's view, to effectively represent herself.  *See* 64 Cal. App. 5th at 72, 79.  The court vacated the arbitration award under the CAA because a person aware of the communication could reasonably believe that the arbitrator was biased against the plaintiff for a particular reason—her "self-represented status."  *Id.* at 79-80.

Setting aside that the *Grabowski* court was applying the CAA rather than the FAA, the *ex parte* communications at issue in *Grabowski* are distinguishable from communications at issue here.  The Arbitrator here did not make any statement would suggest that he was biased against Riley or for QuantumScape.  He received a form OSAAC application and signed it.  This communication could not lead a person to reasonably entertain a doubt that the arbitrator would be able to be impartial.  The Court therefore finds that the OSAAC *ex parte* communication at issue here does not warrant vacatur, even under the standard recited in *Grabowski*.

The conduct at issue simply does not meet the FAA's standard for vacatur.  An arbitration award may be vacated because of *ex parte* communications only if: (1) the communications deprived the party seeking vacatur of a fair hearing and influenced the outcome of the arbitration;

---

[1] The *Valrose* court applied Hawaii law but noted that it would reach the same result under the FAA.  105 F. Supp. 2d at 1123 n.9.

United States District Court
Northern District of California

1   and (2) the subject matter of the communication went to the heart of the dispute's merits. *See*

2   *United States v. SF Green Clean, LLC*, No. C 14-01905 JSW, 2014 WL 3920037 (N.D. Cal. Aug.

3   8, 2014), *aff'd*, 656 F. App'x 319 (9th Cir. 2016). Here, there is no basis to find Mr. Gorman's

4   email attaching an OSAAC application influenced the outcome of the arbitration or went to the

5   heart of the dispute's merits.

6             **ii.   Bias in Approval of the Application**

7       The Court next turns to Riley's contention that the arbitrator exhibited evident partiality by

8   approving Mr. Gorman's application. Riley Mot. 16-18; Riley Reply 5-6. Riley contends that the

9   Arbitrator approved the application despite knowing that QuantumScape failed to properly serve

10   the application and then "essentially admitted to bias" when he stated in his Fee Order that he

11   would have overruled any objection to the application. Riley Mot. 16-18; Riley Reply 5-6, 10-11.

12       Because Riley's assertion here is that the Arbitrator demonstrated actual bias, Riley must

13   establish specific facts that indicate that the Arbitrator had improper motives. *See Woods,* 78 F.3d

14   at 427. "The appearance of impropriety, standing alone, is insufficient" to establish actual bias

15   warranting vacatur under the FAA for evident partiality. *See id.* (quoting *Kinney*, 756 F.2d at

16   746.).

17       Riley identifies no facts that would suggest the Arbitrator had improper motives here.

18   Riley appears to disagree with the Arbitrator's decision to approve Mr. Gorman's application.

19   "[B]ut '[e]ven repeated rulings against one party to the arbitration will not establish bias absent

20   some evidence of improper motivation.'" *Golden v. O'Melveny & Myers LLP*, No. 19-56371,

21   2021 WL 3466044, at *1 (9th Cir. Aug. 6, 2021) (quoting *Kinney*, 756 F.2d at 746). The

22   Arbitrator's statement in his Fee Order that he "would have overruled any objection because Mr.

23   Gorman was and is obviously qualified to be admitted under that program," Marek Decl. Ex. 30 at

24   4 n.3, adds no suggestion of improper motive. The statement does not indicate that the arbitrator

25   had any interest in the outcome of the arbitration. It suggests nothing more than the Arbitrator's

26   view that Mr. Gorman was sufficiently qualified for the OSAAC program.

27             **b.  Documents Submitted for In Camera Review**

28       Riley argues that the arbitrator demonstrated evident partiality when he "did not raise the

1   breach of JAMS and ethical prohibitions" in response to QuantumScape submitting documents *ex*

2   *parte* for *in camera* review.  Riley Mot. 18.  Riley frames this issue in terms of nondisclosure,

3   faulting the Arbitrator for not "immediately disclos[ing] the communication to Riley's counsel."

4   *Id.*

5          As this is an issue of alleged nondisclosure, the Court analyzes whether the Arbitrator

6   failed to disclose facts indicating that he might reasonably be thought biased against one litigant

7   and favorable to another.  *Lagstein*, 607 F.3d 645.  The Court again finds it useful to revisit the

8   facts as submitted by Riley.

9          On May 18, 2022, QuantumScape filed its reply in support of its motion for fees.  Marek

10   Decl. Ex. 21.  In its reply QuantumScape stated that it had "supplemented [its] Motion with the

11   applicable invoices for the Arbitrator's *in camera* review."  *Id.* at 9.  That day, QuantumScape

12   emailed the Arbitrator *ex parte* stating that QuantumScape was providing invoices for *in camera*

13   review.  Marek Decl. Ex. 28, at 3.

14          The next day, a JAMS case manager replied to QuantumScape's email stating that the

15   Arbitrator would only review submissions shared with all counsel.  *Id.* at 1.  The Arbitrator also

16   posted a message to JAMS Access instructing that "all communications from any party to [him]

17   should be via documents uploaded onto Access or this portal, which ensures there is no ex parte

18   communication."  Marek Decl. Ex. 24, at 2.  The Arbitrator also stated that he "gather[ed] from

19   [his] Case Manager that Respondent's counsel submitted unredacted invoices" but that he "did

20   NOT look at them."  *Id.*  The Arbitrator added that "[i]f a party wants to submit something for in

21   camera review, that party must seek permission by filing a request and serving it on opposing

22   counsel so it is transparent" and that he would rule on such a request after the opposing party has

23   had a chance to respond.  *Id.*

24          In his Fees Order, issued on June 2, 2022, the Arbitrator reiterated that he did not review

25   the submission.  He explained:

26          There has been some back and forth regarding *ex parte*
            communications. To be clear, the Arbitrator has not looked at
27          anything from either party unless it has been uploaded onto Access.
            While there was an attempt to submit some billing material for *in*
28          *camera* review, there was no application filed seeking such

1    permission, which, if that had been done, the other side could have
     opposed or sought the imposition of some conditions.

2    Fee Order at 3 n.1.

3         Based on these facts, the Court finds that the Arbitrator did not fail to disclose facts

4    indicating that he might reasonably be thought biased against Riley and favorable to

5    QuantumScape. *See Lagstein*, 607 F.3d 645. When QuantumScape improperly attempted to

6    submit documents *ex parte* for *in camera* review the Arbitrator's case manager instructed

7    QuantumScape that it would need to provide the documents to opposing counsel. The Arbitrator

8    confirmed this instruction in a message to both parties and assured the parties he had not reviewed

9    the documents both in his message and again in his fees order. There are no facts here indicating

10   that the Arbitrator might reasonably be thought to be biased in favor of QuantumScape when it is

11   clear that the Arbitrator shut down the attempted *ex parte* contact at every turn.

12              **c.  Fees and Costs Award**

13        Riley argues that the arbitrator's Fee Order "was the product of bias." Riley Mot. 19.

14   Riley seems to suggest that the Arbitrator was biased because Riley's counsel was requesting

15   documents from JAMS concerning alleged *ex parte* communications and "making allegations at

16   the arbitrator concerning his conduct." *Id.* Riley also argues without analysis that that the Fee

17   Order ignored law on fee shifting, awarded fees for work performed by out-of-state attorneys,

18   never demanded a credible explanation for Mr. Gorman's "untimely" OSAAC application, *sua*

19   *sponte* awarded QuantumScape "fees on fees," and awarded QuantumScape various non-statutory

20   costs. *Id.*

21        The Court begins with Riley's contention that the Fees Order reflected bias because

22   Riley's counsel was seeking documents from JAMS concerning alleged *ex parte* communications

23   and alleging that the arbitrator engaged in improper conduct. The Court finds the Ninth Circuit's

24   analysis in *Toyota of Berkeley v. Automobile Salesman's Union, Local 1095, United Food and*

25   *Commercial Workers Union*, 834 F.2d 751 (9th Cir. 1987), to be on point. In *Toyota*, the Ninth

26   Circuit held that the naming of an arbitrator as a defendant in a lawsuit does not create an

27   appearance of bias. 834 F.2d at 756-757. The court explained: "It would be an odd result to hold

28   that a party to arbitration can manufacture bias by naming the arbitrator in a suit. . . . Such a result

1   would allow a party who is reluctant to arbitrate a foolproof way to disqualify the arbitrator, by

2   filing a suit." Id. at 757.  The court went on to explain that just as a judge's alleged bias must

3   result from an extrajudicial source, and not by a litigant's suit or threatened suit against him, there

4   is no automatic bias against an arbitrator who is sued in his or her professional capacity by one of

5   the parties.  *Id.*  "To hold otherwise would thwart the congressional policy favoring arbitration of

6   labor disputes."  *Id.*

7          Here, Riley appears to contend that the Arbitrator was biased due Riley's "allegations . . .

8   concerning his conduct."  Riley Mot. 18.  Riley's argument implicates the exact concerns raised in

9   *Toyota*.  Riley identifies no specific facts that indicate that the Arbitrator had improper motives

10  outside of the fact that Riley "ma[de] allegations at the arbitrator."  This is insufficient to establish

11  actual bias.

12         The Court also finds that Riley's list of disagreements with the Arbitrator's order is

13  insufficient to establish the Arbitrator's bias.  "Even repeated rulings against one party to the

14  arbitration will not establish bias absent some evidence of improper motivation."  *Kinney*, 756

15  F.2d at 746.  Riley has not identified any improper motivation that would cause the Arbitrator to

16  disfavor him or to favor QuantumScape.  Riley's identification of what he believes to be errors in

17  the Arbitrator's decision therefore do not reflect bias requiring vacatur.

18                    **d.  Disclosure of Complete Record**

19         Riley argues that the Arbitrator "created an impression of possible bias" by "refus[ing] to

20  produce a complete record."  Riley Mot. 19-20.  The Court again finds it useful to summarize the

21  facts as asserted by Riley.

22         On May 10, 2022, the day after JAMS case manager Terri Benson uploaded Mr. Gorman's

23  OSAAC application to JAMS Access, Riley's counsel exchanged emails with JAMS case manager

24  Scott Schreiber.  *See* Marek Decl. Exs. 17, 20.  Riley's counsel requested, and Mr. Schreiber

25  provided him, the March 15, 2022, email chain in which Mr. Gorman submitted his OSAAC

26  application to Mr. Schreiber.  Marek Decl. Ex. 20, at 2.

27         On May 19, 2022, the day after QuantumScape submitted its reply in support of its motion

28  for fees, Riley submitted a "Supplemental Filing in Opposition to Respondent's *Ex Parte*

United States District Court
Northern District of California

20

Communication With Arbitrator."  Marek Decl. Ex. 22.  The filing opposed QuantumScape's submission of billing records in support of its motion for fees *ex parte* for *in camera* review.  *Id.* at 1.  The filing also requested Riley be provided "all correspondence between [QuantumScape] and the Arbitrator."  *Id.* at 4.

That same day, the Arbitrator posted a message to JAMS Access.  Marek Decl. Ex. 25. The message stated, among other things, "Any emails to me or my Cases Manager w/o a cc to opposing party should be bundled by the Case Manager and uploaded onto Access."  *Id.*

On May 23, 2022, Ms. Benson uploaded emails to JAMS Access.  Marek Decl. Ex. 26. That day, Riley's counsel posted a message on JAMS Access directed to Ms. Benson.  Marek Decl. Ex. 28.  The message stated Riley's counsel's belief that the email collection Ms. Benson uploaded was missing two emails that should have been included.  Marek Decl. Ex. 28.

On June 2, 2022, Ms. Benson uploaded a second set of emails.  Marek Decl. ¶ 75.  Ms. Benson stated in a cover letter that the collection included all those previously uploaded with the addition of one of the omissions Riley's counsel identified.  Marek Decl. Ex. 29.  Ms. Benson noted that the other omission Riley's counsel identified was, in fact, included in the original set of emails.  *Id.*  Ms. Benson noted that "[t]here is no representation that the attached collection is exhaustive."  *Id.*

On June 14, 2022, Riley's counsel uploaded another message to JAMS Access directed to Ms. Benson.  Marek Decl. Ex. 31.  The messaged stated that Riley's counsel was "reiterating [his] — and the Arbitrator's — requests for all correspondence on this matter that did not include Riley's counsel but was between QuantumScape's counsel and JAMS staff or between QuantumScape's counsel and the Arbitrator."  *Id.*  That day, Sheri Eisner, JAMS General Counsel, issued a notice to all parties in the matter.  Marek Decl. Ex. 33.  The message stated that JAMS will provide nothing further in response to Riley's requests.  *Id.*  The Arbitrator issued the Final Award the next day.

Riley does not develop his argument, but he is presumably asserting evident partiality based on nondisclosure.  The question for the Court is thus whether the Arbitrator failed to disclose information gives the impression of bias in favor of one party.  *See Woods*, 78 F.3d 427.

1       Upon reviewing the record provided by Riley, the Court finds that Riley has not

2   demonstrated evident partiality in the Arbitrator.  Riley's only basis for contending that there was

3   any nondisclosure at all is the JAMS case manager's statement that she is not representing that the

4   collection of emails she provided is exhaustive.  This does not establish that there are missing

5   emails at all, much less that there are emails that the Arbitrator failed to disclose that would give a

6   reasonable impression of bias in favor of QuantumScape.

7       Riley in effect asks this Court to infer (1) that there were ex parte communications that he

8   did not receive and (2) that any such *ex parte* communication necessarily reflects evident

9   partiality.  Riley has not identified a single potential communication to support the first inference.

10  And the second inference is contrary to the case law in this District holding that *ex parte*

11  communications do not necessarily reflect evident partiality.  *See, e.g.*, *Arora*, 2010 WL 2925178,

12  at *6; *SF Green Clean*, 2014 WL 3920037, at *3; *Ardalan*, 2012 WL 2503972, at *4.

13  Accordingly, the Court finds that Riley has not demonstrated that the Arbitrator demonstrated

14  evident impartiality due to any alleged failure to "produce a complete record."

15          **2.   Misbehavior**

16       A court may vacate an arbitration award upon finding that "the arbitrators were guilty

17  of. . . misbehavior by which the rights of any party have been prejudiced."  9 U.S.C. § 10(a)(3).

18  "In determining whether an arbitrator's misbehavior or misconduct prejudiced the rights of the

19  parties, we ask whether the parties received a fundamentally fair hearing."  *Move, Inc. v. Citigroup*

20  *Glob. Markets, Inc.*, 840 F.3d 1152, 1158 (9th Cir. 2016) (citing *U.S. Life Ins. Co. v. Superior Nat.*

21  *Ins. Co.*, 591 F.3d 1167, 1177 (9th Cir. 2010)).

22       Although Riley cited Section 10(a)(3) as a ground for vacatur in his opening brief, Riley

23  offers no argument for vacatur on this basis until his reply.  *See* Reply 15.  Even then, Riley offers

24  only two conclusory sentences in support of its assertion that vacatur is appropriate under Section

25  10(a)(3).  Riley contends that (1) "the Arbitrator engaged in misbehavior that prejudiced Riley's

26  rights to a fundamentally fair hearing," and (2) "the Arbitrator's dealings with QS's counsel

27  provide a basis for vacatur."  Riley Reply 15.

28       The Court finds that neither of Riley's conclusory assertions is sufficient establish that

United States District Court
Northern District of California

1    vacatur is warranted under Section 10(a)(3).  Riley offers no argument specific to Section 10(a)(3).

2    He instead appears to attempt to incorporate his entire reply brief into his argument.  *See* Riley

3    Reply 15.  It is Riley's burden to establish that vacatur is appropriate, and the Court will not take

4    Riley's invitation to scour his brief and extract arguments for him.  *Cf. Independence Towers of*

5    *Washington v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting

6    for truffles buried in briefs.") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.

7    1991)).  Accordingly, the Court finds that Riley has not shown any misbehavior on the part of the

8    Arbitrator.

9                           **3.  Manifest Disregard of the Law**

10    Vacatur under § 10(a)(4) is warranted when an arbitration award exhibits a manifest

11   disregard of law or is completely irrational.  "[M]anifest disregard . . . requires something beyond

12   and different from a mere error in the law or failure on the part of the arbitrators to understand and

13   apply the law." *Bosack v. Soward*, 586 F.3d 1096, 1104 (9th Cir. 2009) (citations and internal

14   quotations omitted).  "To demonstrate manifest disregard, the moving party must show that the

15   arbitrator understood and correctly stated the law, but proceeded to disregard the

16   same." *Id.* (citations omitted and cleaned up).  "There must be some evidence in the record, other

17   than the result, that the arbitrators were aware of the law and intentionally disregarded

18   it." *Id.* (citations omitted and cleaned up).  A court also must accept the arbitrator's findings of

19   fact. *See Carter v. Health Net of Cal., Inc.*, 374 F.3d 830, 838 (9th Cir. 2004) ("Errors of fact do

20   not generally constitute manifest disregard" of law).  In addition, any law alleged to have been

21   disregarded must be well defined, explicit, and clearly applicable. *Collins v. D.R. Horton, Inc.*,

22   505 F.3d 874, 879-80 (9th Cir. 2007).

23    An award may also be vacated if it is "completely irrational."  *Bosack*, 586 F.3d at

24   1106 (quoting *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009)).

25   "Under this standard of review, we decide only whether the arbitrator's decision draws its essence

26   from the contract, not the rightness or wrongness of the arbitrator's contract interpretation." *Aspic*

27   *Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir.

28   2019) (cleaned up).  An award is completely irrational if it ignores controlling terms of the parties'

United States District Court
Northern District of California

                                                                           23

contract.  *See Bosack*, 586 F.3d at 1107; *Aspic*, 913 F.3d at 1167.

Riley bases all his arguments under 9 U.S.C. 10(a)(4) on the Arbitrator's purported manifest disregard of the law.  Riley argues that the arbitrator manifestly disregarded the law when he found that (1) the Separation Agreement was supported by consideration; (2) QuantumScape did not breach the implied covenant of good faith and fair dealing; (3) awarded certain fees for out-of-state attorneys; (4) held that the fee-shifting provision in the agreements was not unconscionable.  The Court addresses each argument in turn.

### a.  Consideration

In the Final Award, the Arbitrator held Riley had not established that QuantumScape breached the implied covenant of good faith and fair dealing when it declined to extend the term of the parties' Consulting Agreement.  Marek Decl. 34, at 11.  Relevant to Riley's petition here, one of the steps in the Arbitrator's analysis was to determine whether his interpretation of the Consulting Agreement rendered the contract illusory.  *Id.* at 11.  He determined that it did not.  *Id.*

Riley argues that the Arbitrator manifestly disregarded the law by "finding consideration in the Separation Agreement when none exists therein."  Riley Mot. 20-21; Riley Reply 13.  The crux of Riley's argument is that the Arbitrator incorrectly determined that the Separation Agreement was supported by consideration based on an obligation created in the Consulting Agreement.  Riley Reply 13.

QuantumScape responds that Riley has not demonstrated manifest disregard because Riley does not identify any controlling authority that the Arbitrator recognized but then ignored.  QS Mot. 19.  QuantumScape further responds that Riley's argument fails because "there was plainly consideration for the Consulting Agreement."  QS Reply 11.  Finally, QuantumScape notes that Riley's reliance on *Coutee v. Barington Capital Group, L.P.*, 336 F.3d 1128 (9th Cir. 2003) is misplaced because that decision recognizes that a court has no authority to reconsider how the arbitrator resolved a factual dispute as Riley asks the court to do here.  *Id.* 11-12.

The Court agrees with QuantumScape that Riley has not demonstrated that the Arbitrator manifestly disregarded the law.  Riley identifies no instance in which the Arbitrator correctly stated but disregarded the law.  *Bosack*, 586 F.3d at 1104.  Instead, Riley invites the Court to

United States District Court
Northern District of California

1    revisit what Riley states is the Arbitrator's conclusion—"that QS's potential obligation to pay

2    Riley Cobra benefits, which arose from the Consulting Agreement, was consideration for the

3    Separation Agreement."  But this Court does not have the authority to re-weigh the evidence

4    considered by the Arbitrator.  *Coutee*, 336 F.3d at 1134.  Even assuming the Arbitrator erred in

5    applying the law to reach the conclusion Riley contends he reached, such an error does not

6    establish manifest disregard of the law.  *See, e.g.*, *Lagstein*, 607 F.3d at 641 ("'Manifest disregard

7    of the law' means something more than just an error in the law or a failure on the part of the

8    arbitrators to understand or apply the law." (quoting *Mich. Mut. Ins. Co. v. Unigard Sec. Ins.

9    Co.,* 44 F.3d 826, 832 (9th Cir.1995)).  The Court thus finds that Riley has not shown that the

10   Arbitrator manifestly disregarded the law.

### b.  Breach of Covenant of Good Faith and Fair Dealing

12          Riley argues that the Arbitrator manifestly disregarded the law when he "held that

13   [QuantumScape] was not required to use good faith and act fairly in exercising its discretion to

14   end or extend the Consulting Agreement" despite "conced[ing] that the Agreement did not include

15   language that [QuantumScape] could terminate the [it] 'for any reason or no reason at all.'" Riley

16   Mot. 22.  QuantumScape responds that the Arbitrator's decision is consistent with the terms of the

17   Consulting Agreement and applicable California law.  QS Mot. 19-20.

18          The Court finds that the Arbitrator did not manifestly disregard the law.  To demonstrate

19   manifest disregard, Riley must show that the Arbitrator understood and correctly stated the law but

20   proceeded to disregard it.  *Bosack*, 586 F.3d 1104.  In the Final Award, the Arbitrator explains that

21   "the scope of conduct prohibited by the covenant of good faith and fair dealing is circumscribed

22   by the purposes and express terms of the contract."  Final Award 9 (quoting *Carma Devs. (Cal.),

23   Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373 (1992)).  He then analyzes the parties'

24   negotiations of the consulting agreement and determines that the purpose of the agreement was to

25   extend the period during which Riley could exercise his options "as long as [QuantumScape] in its

26   discretion elected to continue the consulting relationship."  *Id.* at 11.  The Arbitrator thus found

27   that the purpose of the agreement gave QuantumScape discretion to terminate or not renew the

28   agreement.  *Id.*

1    Riley's contention that the Arbitrator disregarded California law because he did not require

2    the agreement to have language such as "for any reason or no reason at all" thus misstates the

3    arbitrator's analysis.  *See* Riley Mot. 21.  The Arbitrator explains in the Final Award that there is

4    no need to look for express language in the agreement given his finding that the purpose of the

5    agreement gave QuantumScape the discretion to terminate or not renew the agreement.  *See* Final

6    Award 10, 11 (explaining that step 1 in the analysis is to determine the purpose of the agreement;

7    step 3 in the analysis is to determine whether the agreement expressly reserves discretion; and step

8    3 is irrelevant here because of step 1).  Thus, Riley has not demonstrated that the arbitrator

9    manifestly disregarded the law.

10                          **c.   Fees for Out-of-State Attorneys**

11    Riley argues that the Arbitrator manifestly disregarded the law when he permitted

12    QuantumScape to collect fees for Mr. Gorman's work prior to October 27, 2021, when Mr.

13    Gorman argued part of QuantumScape's demurrer motion, and after March 15, 2022, when the

14    Arbitrator found Mr. Gorman to be in "substantial compliance" with the OSAAC requirements.

15    Riley Mot. 22-23.  Riley also argues that the Arbitrator manifestly disregarded the law when he

16    permitted QuantumScape to collect fees for Allison Renner, another out-of-state attorney.  *Id.* at

17    23.  QuantumScape responds that the Arbitrator's decision to permit QuantumScape to recover for

18    Mr. Gorman's work prior to October 27, 2021, comports with the Arbitrator's interpretation of

19    California law.  QS Mot. 20-21.  QuantumScape argues that the Arbitrator was justified in

20    awarding QuantumScape fees for Mr. Gorman's work after March 15, 2022, because the

21    Arbitrator had granted Mr. Gorman permission to appear.  *Id.* at 21.

22    Riley fails to establish that the Arbitrator manifestly disregarded the law.  Applying *Golba*

23    *v. Dick's Sporting Goods, Inc.*, 238 Cal. App. 4th 1251 (2015), the arbitrator determined that

24    because lead counsel was admitted in California, QuantumScape was permitted to recover for non-

25    admitted attorneys unless and until they appear.  Final Award 13.  The Arbitrator determined that

26    Mr. Gorman first appeared when he argued a part of the demurrer, and thus QuantumScape was

27    permitted to recover for his fees up until this appearance.  *Id.*  Riley disagrees that the Arbitrator

28    should have awarded these fees because Riley views Mr. Gorman's later-filed OSAAC application

1    as untimely.  Riley Mot. 22.  But Riley identifies no controlling authority that confirms his view

2    that the timing of Mr. Gorman's OSAAC application precludes QuantumScape from collecting

3    any of his fees—much less authority that the Arbitrator recognized and ignored.  *Cf. Collins*, 505

4    F.3d at 880-81 ("[T]o rise to the level of manifest disregard "[t]he governing law alleged to have

5    been ignored by the arbitrators must be *well defined, explicit, and clearly applicable*." (emphasis

6    in original)).

7          Riley also fails to show that the Arbitrator manifestly disregarded the law in awarding

8    QuantumScape fees for Mr. Gorman's work after the Arbitrator approved his OSAAC application.

9    Again, Riley's argument turns on his disagreement with the Arbitrator's interpretation of the law.

10   Riley cites no controlling authority that the Arbitrator ignored in determining that QuantumScape

11   could recover Mr. Gorman's fees for work performed after the Arbitrator approved his OSAAC

12   application.  Riley has thus failed to demonstrate that the Arbitrator manifestly disregarded the

13   law.

14                    **d.  Unconscionability of Fees-Shifting Provision**

15         Riley argues that the Arbitrator manifestly disregarded the law when he found that the fee-

16   shifting provisions of the Separation Agreement and Consulting Agreement were not

17   unconscionable.  Riley Mot. 23-25.  QuantumScape responds that the Arbitrator's decision was

18   supported both by his finding that Riley waived the argument and his finding that the parties'

19   negotiation of the contracts defeated unconscionability.  QuantumScape Mot. 21-22.

20         The Court finds that Riley has not demonstrated that the Arbitrator manifestly disregarded

21   the law in finding procedural unconscionability.  The Arbitrator determined that the fee-shifting

22   provision was not procedurally unconscionable because, among other reasons, "[t]he underlying

23   agreements were negotiated and terms were changed during those negotiations."  Final Award 12.

24   Riley argues that this analysis applies the wrong legal standard.  Riley Mot. 24.  But even if Riley

25   is right, this does not reflect a manifest disregard of the law.  *See, e.g.*, *Biller v. Toyota Motor*

26   *Corp.*, 668 F.3d 655, 668 n.7 (9th Cir. 2012) ("[E]ven misstatements of the law followed by

27   erroneous application of the law do not provide grounds upon which a reviewing court may vacate

28   an arbitral award under the FAA.").  Riley identifies no evidence to suggest that the Arbitrator

United States District Court
Northern District of California

1   understood the law to require a different standard and then disregarded that standard.  *See Bosack*

2   *v. Soward*, 586 F.3d at 1104 ("There must be some evidence in the record, other than the result,

3   that the arbitrators were aware of the law and intentionally disregarded it." (citations omitted and

4   cleaned up)).  Accordingly, Riley has failed to demonstrate that the Arbitrator manifestly

5   disregarded the law in finding that the fee-shifting provision was not procedurally unconscionable.

6        Because the Court finds that Riley has not demonstrated that the Arbitrator manifestly

7   disregarded the law in finding the fee-shifting provision was not procedurally unconscionable, the

8   Court need not reach Riley's argument regarding substantive unconscionability.  *Cf. Wherry v.*

9   *Award, Inc.*, 192 Cal. App. 4th 1242, 1246 (2011) ("To be voided on this ground, the agreement

10  must be both procedurally and substantively unconscionable.")

11                          **4.  Conclusion**

12       The Court finds that Riley has not established any basis that warrants vacating the

13  arbitration award.  Accordingly, the Court DENIES Riley's motion to vacate and GRANTS

14  QuantumScape's motion to confirm the award.  *See* 9 U.S.C. § 9; *Jackson v. Applied Materials*

15  *Corp.*, No. 20-CV-06007-VKD, 2022 WL 16824327, at *1 (N.D. Cal. Oct. 7, 2022) ("[W]hen

16  presented with an application to confirm an arbitration award, 'the court must grant such an order

17  unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§ 10, 11].'").

18                 **C.  Post-Award, Prejudgment Interest**

19       QuantumScape requests post-award prejudgment interest under California Civil Code § 3287.

20  QS Mot. 24-25.  Riley opposes, arguing that the Arbitrator was not required to grant prejudgment

21  interest.  Riley Reply 15.

22       Prejudgment interest in a diversity suit under the FAA is governed by state law.  *See*

23  *Northrop Corp. v. Triad Int'l Mktg., S.A.*, 842 F.2d 1154, 1155 (9th Cir. 1988).  California law

24  provides that prejudgment interest is available from the date the arbitration panel renders its

25  award.  *Fid. Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1024 (9th Cir. 2004) (citing

26  *Pierotti v. Torian*, 81 Cal. App. 4th 17, 96 Cal. Rptr. 2d 553 (2000)).  The California rate for

27  prejudgment interest is 7%.  *Michelson v. Hamada*, 29 Cal. App. 4th 1566, 1585 (1994).

28       Under California Civil Code § 3287, QuantumScape is entitled to post-award prejudgment

United States District Court
Northern District of California

28

United States District Court
Northern District of California

interest as a matter of right.  *See Pierotti*, 81 Cal. App. 4th 17.  The Court therefore finds that QuantumScape is entitled to post-award prejudgment interest.

Riley cites *VoXcell Cloud LLC v. Decision Scis. Int'l Corp.*, No. 3:20-CV-00329-JAH-BLM, 2022 WL 2277501, at *5 (S.D. Cal. June 22, 2022), for the proposition that the arbitrator was not required to grant prejudgment interest.  Riley Reply 15.  But that section of the *VoXcell* opinion concerned prejudgment interest, that included pre-award interest.  *See* 2022 WL 2277501, at *5.  The opinion later awarded petitioners post-award prejudgment interest.  *Id.* at *6.  Here, QuantumScape seeks only post-award prejudgment interest.  Riley's argument is thus inapposite.

Accordingly, the Court finds that QuantumScape is entitled to post-award prejudgment interest at an annual rate of 7% accruing on the principal judgment amount of $713,278.49.[2]  The Court requests that QuantumScape submit a proposed judgment and affidavit demonstrating the calculation of accrued interest.

## III.   ORDER

For the foregoing reasons, the Court DENIES Riley's petition to vacate and GRANTS QuantumScape's cross-motion to confirm the arbitration award.  The Court enters Judgment in favor of QuantumScape as follows: (1) $634,631.50 in attorney's fees pursuant to the Final Award; (2) $81,646.99 in costs and expenses pursuant to the Final Award; and (3) prejudgment interest pursuant to Cal. Civ. Code § 3287 to be calculated and submitted by QuantumScape.[3]

QuantumScape SHALL submit a proposed judgment and affidavit demonstrating the calculation of accrued interest by no later than **February 9, 2023**.

**IT IS SO ORDERED.**

Dated:  February 2, 2023

_____
BETH LABSON FREEMAN
United States District Judge

---

[2] QuantumScape listed the principal judgment amount as $713,632.49.  QS Mot. 25.  That amount was provided in the Fee Order.  Marek Decl. Ex. 30.  The Arbitrator reduced the amount to $713,278.49 in the Final Award.  Marek Decl. Ex. 34.
[3] QuantumScape requests that the Court impose a 30-day deadline from the entry of judgment for Riley to make the payment to QuantumScape.  The Court declines to do so.