UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| GILBERT RILEY,<br><br>   Petitioner,<br><br> v.<br><br>QUANTUMSCAPE CORP.,<br><br>   Respondent. | Case No. 22-cv-03871-BLF<br><br>**ORDER GRANTING IN PART MOTION FOR ATTORNEYS' FEES AND COSTS AND AN AWARD OF POST-JUDGMENT INTEREST**<br><br>[Re: ECF No. 49] |

  Before the Court is Respondent QuantumScape Corporation's motion for attorneys' fees and costs and an award of post-judgment interest. *See* Mot., ECF No. 49. QuantumScape seeks from Petitioner Gilbert Riley fees and costs related to QuantumScape's opposition to Riley's petition to vacate an arbitration award and QuantumScape's cross-motion to confirm the same. QuantumScape also seeks post-judgment interest under 28 U.S.C. § 1961. Riley opposes the motion. Opp'n ECF No. 54. QuantumScape has replied. Reply, ECF No. 55.

  The Court found this matter suitable for determination without oral argument. *See* Order, ECF No. 56. For the following reasons, the Court GRANTS IN PART QuantumScape's motion.

**I. BACKGROUND**

  On February 26, 2021, Gilbert Riley initiated an arbitration against QuantumScape after QuantumScape terminated his employment. Decl. of David Marek Supp. Pet. to Vacate Arbitration Award ("Marek Decl.") Ex. 2, at 1-2 ("Arb. Demand"), ECF No. 2-2. Riley sought to recover shares or the value of shares in QuantumScape of which he was allegedly deprived after his termination. *Id.* at 9.

  On June 15, 2022, the Arbitrator issued a Final Award. *See* Marek Decl. Ex. 34 ("Final Award"), ECF No. 2-34. The Arbitrator held that Riley had failed to prove his claims and

1     awarded QuantumScape fees and costs. *Id.* at 15.

2         On June 30, 2022, Riley petitioned this Court to vacate the arbitration award. *See* Pet.,

3     ECF No. 1. Riley argued multiple bases for vacatur under both the Federal Arbitration Act and

4     California Arbitration Act. *See* Mem. Supp. Pet. Vacate 11, ECF No. 17. Riley asserted that the

5     Arbitrator exhibited bias under both an evident-partiality theory and a failure-to-disclose theory.

6     *See id.* at 14-20. Riley also asserted that the Arbitrator's award reflected a manifest disregard of

7     the law in multiple respects. *See id.* at 20-25. QuantumScape cross-moved to confirm the

8     arbitration award. *See* Cross-Mot., ECF No. 27.

9         After hearing oral argument, this Court issued an order denying Riley's petition and

10    granting QuantumScape's cross-motion. Order, ECF No. 43.

11        QuantumScape now seeks fees and costs under the parties' Separation Agreement and

12    Release ("Separation Agreement") and Consulting Agreement. Mot. 2. The Arbitrator already

13    awarded QuantumScape fees and costs for its work in the underlying arbitration. QuantumScape's

14    request before this Court thus primarily concerns QuantumScape's attorneys' work in opposing

15    Riley's petition to vacate the arbitration award and cross-moving to confirm the arbitration award.

16    **II.   LEGAL STANDARD**

17        California Civil Code § 1717(a), which governs fee applications stemming from contract

18    actions, provides:

19
20    > In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.
21
22

23    Cal. Civ. Code § 1717(a).

24        The Court determines whether a party has prevailed on the contract for the purposes of

25    awarding fees. Cal. Civ. Code § 1717(b)(1). "As long as the action 'involve[s]' a contract it is

26    'on [the] contact' within the meaning of section 1717." *Brown Bark III, L.P. v. Haver*, 219 Cal.

27    App. 4th 809, 821 (2013) (alterations in original).

28

### III. DISCUSSION

#### A. Entitlement to Fees Under the Agreements

QuantumScape seeks fees under the parties' Separation Agreement and Consulting Agreement. Mot. 2. The agreements provide as follows:

> <u>Attorneys' Fees</u>. Except with regard to a legal action challenging or seeking a determination in good faith of the validity of the waiver herein under the ADEA, in the event that either Party brings an action to enforce or effect this Agreement, the prevailing Party shall be entitled to recover its costs and expenses, including the costs of mediation, arbitration, litigation, court fees, and reasonable attorneys' fees incurred in connection with such action.

Separation Agreement § 24.

> ***Attorneys' Fees.*** In any court action at law or equity that is brought by one of the Parties to this Agreement to enforce or interpret provisions of this Agreement, the prevailing Party will be entitled to reasonable attorneys' fees, in addition to any other relief to which that Party may be entitled.

Consulting Agreement § H.

Riley opposes QuantumScape's request. Riley argues that the Court should deny QuantumScape's motion based on "principles of equity" because: (1) QuantumScape has "unclean hands" due to what Riley viewed as QuantumScape's improper conduct in arbitration; (2) the contract lacked mutuality; and (3) the Separation Agreement is unenforceable under *McLaren Macomb*, 372 N.L.R.B. No. 58 (2023). *Id.* at 3.

QuantumScape replies to each of Riley's arguments. QuantumScape argues that Riley's "unclean hands" argument fails because QuantumScape did not engage in misconduct and the fees QuantumScape seeks arose from properly opposing Riley's motion to vacate. Reply 1-2. QuantumScape argues that Riley's lack-of-mutuality argument has already been rejected by this Court and fails because Riley conceded that he engaged in extensive negotiations over the terms of the agreements. *Id.* at 2. Finally, QuantumScape argues that *McLaren Macomb* is inapplicable here for multiple reasons, and even if the Separation Agreement were unenforceable under that decision, QuantumScape would be entitled to fees under the Consulting Agreement. *Id.* at 2.

The Court first addresses Riley's argument that QuantumScape should be denied fees under the "unclean hands" doctrine. "The defense of unclean hands arises from the maxim, 'He who comes into Equity must come with clean hands.'" *Mendoza v. Ruesga*, 169 Cal. App. 4th

3

1  270, 278 (2008) (quoting *Kendall-Jackson Winery, Ltd. v. Superior Ct.*, 76 Cal. App. 4th 970, 978

2  (1999)). The defense requires "unconscionable, bad faith, or inequitable conduct by the plaintiff

3  in connection with the matter in controversy." *Id.* (quoting *Fladeboe v. American Isuzu Motors*,

4  Inc. 150 Cal. App. 4th 42, 56 (2007)). "Whether the defense applies in particular circumstances

5  depends on the analogous case law, the nature of the misconduct, and the relationship of the

6  misconduct to the claimed injuries." *Id.* (quoting *Fladeboe*, 15 Cal. App. 4th at 56).

7        As an initial matter, Riley has not pointed the court to "analogous case law." None of the

8  cases Riley cites analyzes a situation in which a party challenged a fee award under the "unclean

9  hands" doctrine. *See PLCM Grp. v. Drexler*, 22 Cal. 4th 1084, 1088, 1095 (2000) (holding that an

10  entity that is represented by in-house counsel may recover attorney fees under California Civil

11  Code § 1717 and affirming a fee award); *Kendall-Jackson*, 76 Cal. App. 4th at 974, 985 (holding

12  that "unclean hands" may be raised as a defense to a malicious prosecution claim based on

13  misconduct connected to the subject matter of a litigation that affects the equitable relations

14  between the litigants); *Mendoza*, 169 Cal. App. 4th 270, 275, 279 (holding that the "unclean

15  hands" doctrine may not be raised as an affirmative defense to a claim under California's

16  Immigration Consultants Act).

17        Riley has also not identified any "unconscionable, bad faith, or inequitable conduct" that

18  would trigger the "unclean hands" doctrine. As Riley correctly notes, this Court stated in its order

19  confirming the arbitration award that certain processes followed by QuantumScape's counsel and

20  the Arbitrator were "sloppy." *See Riley v. QuantumScape Corp.*, No. 22-CV-03871-BLF, 2023

21  WL 1475092, at *9 (N.D. Cal. Feb. 2, 2023). But Riley does not show how such sloppiness rises

22  to the level of unconscionable, bad faith, or inequitable conduct that would trigger the "unclean

23  hands" doctrine. Nor does Riley offer any substantive explanation about why any of the other

24  conduct he challenged would trigger the doctrine. Accordingly, the Court finds that a fee award is

25  not barred by the "unclean hands" doctrine here.

26        Riley's second argument is similarly unavailing. Riley asserts that "the equities should

27  prohibit [QuantumScape] from getting additional fees based on a 'take it or leave it' contract that

28  lacked mutuality by ensuring that Riley did not receive any material legal benefits from the

4

arrangement while Respondent received substantial monetary and non-monetary benefits." Opp'n 3. But Riley does not develop his argument beyond this sentence. And it is not the Court's duty to formulate Riley's argument for him. *Cf. Foskaris v. Experian Info. Sols., Inc.*, 808 F. App'x 436, 440 (9th Cir. 2020) ("It is not the court's duty, however, to peruse the record to formulate the parties' arguments."). Moreover, the Arbitrator already determined that the Separation Agreement was supported by adequate consideration, and this Court already determined that the arbitrator's decision was not contrary to law. *Riley*, 2023 WL 1475092, at *16. Thus, Riley has not shown any reason to disregard the fees provisions to which he and QuantumScape agreed when they formed their agreements.

Finally, Riley's reliance on *McLaren Macomb* to argue that the Separation Agreement is unenforceable is misplaced. Riley asserts based on *McLaren Macomb* that "a separation agreement with broad confidentiality and/or non-disparagement provisions is unenforceable as a matter of law." *See* Opp'n 3. But Riley does not analyze the terms of any provision in the Separation Agreement to explain why the provision would fall within the proscription described in *McLaren Macomb*. This is particularly troubling given the Board's emphasis in *McLaren Macomb* on the importance of the terms of the agreement. *See* 372 N.L.R.B. No. 58, at *11 ("Our main disagreement with the dissent's adherence to *Baylor* and *IGT* is the refusal in those cases to analyze the terms of the severance agreements."); *see also id.* at *5 (stating that in determining whether a severance agreement is unlawful "we will examine . . . the language of the agreement"). Moreover, Riley does not explain why *McLaren Macomb* would render the fees provision here unenforceable, and if so, why this Court should follow the Board's non-binding decision. Finally, Riley does not explain how a finding that the fees provision in the Separation Agreement is unenforceable would render the fees provision in the separate Consulting Agreement unenforceable. For all these reasons, the Court finds Riley's invocation of *McLaren Macomb* unpersuasive.

In sum, the Court finds that QuantumScape has established its entitlement to fees as a prevailing party under the plain terms of the agreement, and none of the "principles of equity" Riley invokes requires otherwise.

5

### B. Reasonableness of QuantumScape's Fees Request

Under California law, courts use the lodestar calculation, which "begins with a touchstone or lodestar, based on the 'careful compilation of time spent and reasonable hourly compensation of each attorney.'" *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-32 (2001) (quoting *Serrano v. Priest*, 20 Cal. 3d 25, 48 (1977)); *see also PLCM*, 22 Cal. 4th at 1095 ("the fee setting inquiry in California ordinarily begins with the 'lodestar.'"). "The reasonable hourly rate is that prevailing in the community for similar work." *PLCM*, 22 Cal. 4th at 1095. "The lodestar figure may then be adjusted, based on consideration of factors specific to the case," including "the nature of the litigation, its difficulty, the amount involved, the skill required in its handling, the skill employed, the attention given, the success or failure, and other circumstances in the case." *Id.* at 1095-96.

#### 1. Hourly Rate

"Generally, in calculating the lodestar, '[t]he reasonable hourly rate is that prevailing in the community for similar work.'" *Rey v. Madera Unified Sch. Dist.*, 203 Cal. App. 4th 1223, 1241 (2012) (quoting *PLCM*, 22 Cal. 4th at 1095). "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (quoting *Blum v. Stenson,* 465 U.S. 886, 895 n.11 (1984)).

QuantumScape was represented by five attorneys from the law firm of Wilson Sonsini Goodrich & Rosati ("Wilson Sonsini"). The attorneys were Marina Tsatalis, Matthew Gorman, Alison Renner, Neil Gulyako, and Heather Diles. Tsatalis Decl. ¶¶ 16, 20.

Ms. Tsatalis has been a partner at Wilson Sonsini for 21 years. Tsatalis Decl. ¶ 5. She graduated *cum laude* from Harvard Law School in 1992. Tsatalis Decl. ¶ 3; *see also* Tsatalis Decl. Ex. 1 ("Tsatalis Bio"), ECF No. 49-2. She has exclusively practiced employment and trade secret litigation throughout her 30 years of practice and is the head of the firm's employment and trade secret litigation practice. Tsatalis Decl. ¶¶ 4-5. QuantumScape seeks to recover fees for Ms. Tsatalis at a billing rate of $1,430/hour. *Id.* ¶ 20.

1    Mr. Gorman is Of Counsel in Wilson Sonsini's Boston office. Tsatalis Decl. ¶ 16.a; *see*

2  *also* Tsatalis Decl. Ex. 9 ("Gorman Bio."), ECF No. 49-10. He graduated from New York

3  University Law School in 2010. Gorman Bio. QuantumScape seeks to recover fees for Mr.

4  Gorman at a billing rate of $1,010/hour. Tsatalis Decl. ¶ 16.a.

5    Ms. Renner is an associate in Wilson Sonsini's New York Office. Tsatalis Decl. ¶ 12.d; *see*

6  *also* Tsatalis Decl. Ex. 12 ("Renner Bio"), ECF No. 49-13. She graduated from Fordham

7  University Law School in 2013. Renner Bio. QuantumScape seeks to recover fees for Ms.

8  Renner at a billing rate of $1,010/hour. Tsatalis Decl. ¶ 16.d.

9    Mr. Gulyako joined Wilson Sonsini in 2019 and is an associate in the firm's New York

10 office. Tsatalis Decl. ¶ 16.b; *see also* Tsatalis Decl. Ex. 10 ("Gulyako Bio"), ECF No. 49-11. It is

11 unclear from QuantumScape's filings when Mr. Gulyako graduated from law school.

12 QuantumScape seeks to recover fees for Mr. Gulyako at a billing rate of $940/hour. Tsatalis Decl.

13 ¶ 16.b.

14    Ms. Diles is an associate in Wilson Sonsini's New York office. Tsatalis Decl. ¶ 16.c; *see*

15 *also* Tsatalis Decl. Ex. 11 ("Diles Bio"); ECF No. 49-12. She graduated *magna cum laude* from

16 New York University Law School in 2017. Diles Bio. QuantumScape seeks to recover fees for

17 Ms. Diles at a billing rate of $875/hour. Tsatalis Decl. ¶ 16.c.

18    In addition to the attorneys above, QuantumScape was represented by four support staff.

19 Tsatalis Decl. ¶¶ 16.e., 20. QuantumScape seeks to recover fees for the support staff at rates

20 ranging from $250/hour to $500/hour. *Id.*

21    QuantumScape argues that these rates are reasonable because (1) they reflect the skills and

22 experience of the particular attorney and the firm's assessment of market rates for attorneys at

23 comparable law firms and (2) are consistent with billing rates at "comparable law firms" in the

24 Bay Area according to a survey by Price Waterhouse. Tsatalis Decl. ¶ 17. Riley responds that

25 QuantumScape has not demonstrated that its rates are reasonable because QuantumScape relies

26 solely on the Tsatalis Declaration. Opp'n 7. Riley notes that QuantumScape provides no

27 affidavits from other attorneys and does not rely on rate determinations in other cases. *Id.* Riley

28 asks that the Court reduce QuantumScape's rates by a third. *Id.* at 8.

7

1      The Court agrees with Riley that QuantumScape has not demonstrated that its requested
2  rates are comparable to those prevailing in the community. Ms. Tsatalis asserts in her declaration
3  that the rates "reflect the rates that were billed to and paid by firm clients (including Respondent,
4  with a 10% discount" and are based on Wilson Sonsini's "assessment of the market rates for
5  attorneys and staff at firms of similar size and reputation." Tsatalis Decl. ¶ 17. But a law firm's
6  own billing rates are not the only factor considered, and Ms. Tsatalis provides no information
7  about what the firm's assessment of market rates entailed. Nor does she provide examples of any
8  rates other than those that Wilson Sonsini charged in this case or any comparable awards in the
9  Northern District of California. Ms. Tsatalis also asserts that the rates are reasonable because they
10 are "consistent with hourly rates for attorneys with comparable seniority" charged by "comparable
11 law firms in the San Francisco Bay Area and Silicon Valley" according to Price Waterhouse's
12 survey of 2022 billing rates. Tsatalis Decl. ¶ 17. But Ms. Tsatalis provides no details about what
13 "comparable law firm" means or what these comparable law firms charge. Nor does she attach the
14 survey to her declaration.

15     Tellingly, the cases QuantumScape cites in its briefing show lower prevailing rates in the
16 community than the rates QuantumScape requests. *Carter v. Jai-Put Enter. Inc.*, No. 18-CV-
17 06313-DMR, 2022 WL 4371503, at *11-13 (N.D. Cal. Sept. 21, 2022) (finding that rates of $850
18 for lead counsel who was a 1988 law graduate, $325 for a 2014 law graduate, $300 for a 2019 law
19 graduate, and $165 for a paralegal were reasonable); *Andrews v. Equinox Holdings, Inc.*, 570 F.
20 Supp. 3d 803, 807-08 (N.D. Cal. 2021) (finding that rates of $1,250 for the founding partner of a
21 nationally recognized civil rights law firm who was a 1962 law graduate, $875 for a partner who
22 was a 1997 law graduate, $600 for a senior counsel who was a 2010 law graduate, $350 for an
23 associate who was a 2018 law graduate, and $240 for a paralegal clerk were reasonable); *Hydros
24 Bottle LLC v. Stephen Gould Corp.*, No. 16-CV-04077-JST, 2017 WL 3453350, at *8-9 (N.D. Cal.
25 Aug. 10, 2017) (finding that rates of $735-$755 for a Principle with 20 years of litigation
26 experience and $630-$695 for a seventh-year associate were excessive).

27     Riley argues that the Court should determine reasonable hourly rates by reference to the
28 "*Laffey* matrix" or by making a 1/3 cut in all rates. Opp'n 7-8. The Court finds neither proposal

8

1   viable. The *Laffey* matrix is "an inflation-adjusted grid of hourly rates for lawyers of varying
2   levels of experience in Washington, D.C." *See Prison Legal News v. Schwarzenegger,* 608 F.3d
3   446, 454 (9th Cir. 2010) (citations omitted). The Ninth Circuit has explained that "just because
4   the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound
5   basis for determining rates elsewhere, let alone in a legal market 3,000 miles away." *Id.*
6   Accordingly, this Court declines to use the matrix. The Court likewise declines Riley's proposal
7   to make a blanket 1/3 cut, as Riley has not made any attempt to show that the resulting rates reflect
8   the prevailing rates in the District.

The Court finds the rates in *Andrews*, a case cited by QuantumScape, informative. The *Andrews* court determined that the requested 2021 rates were reasonable based on the opinion of an expert with "extensive experience in the area of attorney billing rates in this district" who "has been widely relied upon by both federal and state courts in Northern California . . . in determining reasonable billing rates." 570 F. Supp. 3d at 807. The Court finds the analysis in *Andrews* persuasive and representative of rates awarded in comparable cases in the Northern District of California. *See Simon v. Maple Beach Ventures LLC*, No. 21-CV-01005-PJH, 2021 WL 1907821, at *4 (N.D. Cal. May 12, 2021) ("Courts also may rely on decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of experience." (citing *Nadarajah v. Holder*, 569 F.3d 906, 917 (9th Cir. 2009))). The Court recognizes that the Arbitrator approved the rates requested by QuantumScape's counsel, but notes that the order only summarily accepts the proffered rates as reasonable and does not discuss comparable rates in the District. This Court is not bound by the Arbitrator's decision on reasonable rates. The Court applies the following rates based on comparators from *Andrews*:

| Attorney | Requested Rate | *Andrews* Comparator: Rate | Applied Rate |
|---|---|---|---|
| Marina Tsatalis Partner Class of 1992 | $1,430 | Partner Class of 1997: $875 | $1050 (increased from *Andrews* comparator rate in recognition of position as head of firm's employment and trade secret litigation practice) |
| Matthew Gorman Of Counsel Class of 2010 | $1,010 | Senior Counsel Class of 2010: $600 | $600 |
| Alison Renner Associate Class of 2013 | $1,010 | Senior Counsel Class of 2010: $600 | $600 |
| Neil Gulyako Associate Unknown Class Joined Firm in 2019 | $940 | Associate Class of 2018: $350 | $350 |
| Heather Diles Associate Class of 2017 | $875 | Associate Class of 2018: $350 | $350 |
| Support Staff | $250-$500 | Paralegal Law Clerk: $350 | $240 |

### 2. Number of Hours

An attorney fee award should include compensation for all hours reasonably spent. *Ketchum*, 24 Cal. 4th at 1133. "Reasonably spent means padding in the form of inefficient or duplicative efforts is not subject to compensation." *Rey v. Madera Unified Sch. Dist.*, 203 Cal. App. 4th 1223, 1243 (2012) (quoting *Ketchum*, 24 Cal. 4th at 1132) (internal quotations omitted). The proponent of the fee request "must prove the hours sought were reasonable and necessary." *Id.* (citing *El Escorial Owners' Assn. v. DLC Plastering, Inc.* 154 Cal. App. 4th 1337, 1366 (2007)).

Before turning to the parties' substantive arguments, the Court notes that Riley correctly identifies that the Fees Chart submitted with QuantumScape's motion includes a greater number of hours than QuantumScape's bills reflect. *Compare* Tsatalis Decl. ¶ 20.3, ECF No. 49-1, *with* Tsatalis Decl. Exs. 2-8, ECF Nos. 49-3 – 49-9. QuantumScape explains in its Reply that it

1  incorrectly summed its hours when drafting the Fees Table. Reply 2-3. QuantumScape submits a
2  corrected Fees Table with its Reply that reflects 159.4 total attorney hours—matching the number
3  of hours in its invoices as calculated by Riley and confirmed by the Court. *See* Tsatalis Suppl.
4  Decl. ¶ 5, ECF No. 55-1.

5       QuantumScape contends that the hours its counsel spent since the Final Award in the
6  underlying arbitration were necessary to oppose Riley's Petition to Vacate. Mot. 4-5.
7  QuantumScape states that it primarily staffed the matter with one partner and one associate and
8  relied on other associates and paralegals only as necessary to handle discrete legal issues. *Id.* at 5.
9  QuantumScape also notes that its fees request accounts for a 10% discount provided by Wilson
10 Sonsini. *Id.* at 6.

11      Riley responds that the number of hours requested is excessive and duplicative given "the
12 small arbitration record" and "the issues presented in the motion to vacate"—many of which
13 "were also raised before the Arbitrator." Opp'n 5. Riley asks the Court to award only 50% of the
14 hours QuantumScape requests for its work drafting its Cross-Motion and Opposition and
15 preparing for oral argument. *Id.* at 6. Riley also asks the Court to deny QuantumScape's request
16 for reimbursement of fees accrued during the arbitration, after oral argument before this Court, and
17 preparing for a case management conference that did not happen. *Id.* at 6-8.

18      QuantumScape replies that the hours it spent were necessary and reasonable.
19 QuantumScape argues that the time it spent briefing and preparing for oral argument was
20 necessary and reasonable given the number of issues Riley raised in his Petition. Reply 3.
21 QuantumScape argues that the Court should order Riley to pay QuantumScape's fees for the
22 underlying arbitration because the relevant invoice was issued after the Arbitrator issued the Final
23 Award. *Id.* at 5. Finally, QuantumScape argues that the Court should order Riley to pay its fees to
24 prepare for the case management conference because QuantumScape assumed it had to prepare for
25 the conference until the Court took it off calendar. *Id.*

26      The Court addresses the fees QuantumScape requests in order of accrual.
27      The Court finds that QuantumScape should be reimbursed for its fees in the underlying
28 arbitration. Riley argues—citing no authority—that this Court "does not have authority" to award

11

1  such fees. Opp'n 9. But Riley does not address why such fees would fall outside of the fees
2  provisions of the Separation Agreement and Consulting Agreement. Nor does Riley address why
3  such fees should be denied despite California Civil Code § 1717, which entitles a party to
4  reasonable attorney's fees in any action on a contract, where the contract specifically provides for
5  attorneys' fees and costs. Accordingly, the Court finds that QuantumScape is entitled to these
6  fees.

The Court next finds that the hours QuantumScape spent briefing its Cross-Motion and Opposition are generally reasonable. Riley primarily argues that QuantumScape's attorneys should have been able to perform their tasks in less time. *See* Opp'n 6. He asks that the Court impose "at least a 50% reduction in billable time" for these tasks. But Riley raised many issues in his Petition and fiercely sought to vacatur of the arbitration award. "A defendant cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101, 114 (2009) (internal quotation marks omitted). And like other courts in this District, this Court is reluctant to second-guess the staffing decisions of the prevailing party's counsel, given that the approach taken by counsel was successful. *See, e.g..*, *Cruz v. Starbucks Corp.*, No. C-10-01868 JCS, 2013 WL 2447862, at *8 (N.D. Cal. June 5, 2013). The Court therefore declines Riley's invitation to impose a blanket 50% cut to QuantumScape's requested hours.

But the Court agrees with Riley that certain of the hours requested for Ms. Tsatalis are unreasonable. Ms. Tsatalis seeks 38.7 hours for work related to the "Petition to Vacate Arbitration Award/Cross-Petition to Confirm Arbitration Award," Tsatalis Supp. Decl. ¶ 5, including about 14.3 hours of preparation time for oral argument,[1] *see* Tsatalis Decl. Exs. 6-7. This is on top of 74.9 hours contributed by Mr. Gorman, an Of Counsel in the firm's employment litigation practice who has been practicing law for over a decade. *See* Tsatalis Supp. Decl. ¶ 5; Gorman Bio. The Court finds the request for Ms. Tsatalis's time to be excessive for an attorney of her vast skill and

---

[1] Ms. Tsatalis's final entry regarding hearing preparations lists 5.6 hours for "prepare for and represent client at hearing on Petition to Vacate and Confirm Arbitration Award; telephone calls re same." Tsatalis Decl. Ex. 7. The hearing was about 1.2 hours long. *See* Minute Entry, ECF No. 36. The Court therefore attributes 4.4 hours of this entry to hearing preparations.

12

1 experience. The Court finds 25 total hours for Ms. Tsatalis's work related to the Petition to
2 Vacate Arbitration Award and Cross-Petition to Confirm Arbitration Award to reflect a reasonable
3 number of hours.

4 The Court next addresses QuantumScape's request for time billed shortly after oral
5 argument. The Court agrees with Riley that QuantumScape has not shown that the hours spent on
6 these tasks were "reasonable and necessary." *Rey*, 203 Cal. App. 4th at 1244. Riley identifies that
7 Ms. Renner, an attorney who did not work on the Opposition to the Petition or Cross-Motion to
8 Confirm, billed 8.9 hours for work done in the two days immediately after oral argument. *See*
9 Opp'n 6. Riley also identifies that Ms. Tsatalis billed 1.6 hours of work shortly after the hearing.
10 *See id.* QuantumScape does not address in its Reply why these hours were reasonable and
11 necessary. Accordingly, the Court finds that QuantumScape has not met its burden to show that it
12 is entitled to recover fees for these hours.

13 Finally, the Court addresses QuantumScape's request for fees to prepare for the case
14 management conference that the Court vacated. QuantumScape requests 3.5 hours for Ms.
15 Tsatalis and 0.9 hours for Mr. Geritano for time spent preparing for the case management
16 conference. *See* Tsatalis Decl. ¶ 20.e; Tsatalis Supp. Decl. ¶ 7. The Court finds that these hours
17 were not reasonable and necessary given that the Court issued judgment before the parties ever
18 submitted a case management statement.

19 \*   \*   \*

20 With the reductions discussed above, the Court finds that QuantumScape is entitled to
21 recover fees in the total of $92,101 in accordance with the following hours and rates:

**Attorney Hours:**

|  | Marina Tsatalis | Matthew Gorman | Alison Renner | Neil Gulyako | Heather Diles |
|---|---|---|---|---|---|
| Rate | $1050 | $600 | $600 | $350 | $350 |
| Arbitration (Hours) | 2.7 | 1.1 | 0 | 0 | 1 |
| Petition to Vacate/Cross-Motion to Confirm (Hours) | 25 | 74.9 | 0 | 6.4 | 22.2 |

13

| | | | | | |
|---|---|---|---|---|---|
| Case Management Conference (Hours) | 0 | 0 | 0 | 0 | 0 |
| **Total Hours** | 27.7 | 76 | 0 | 6.4 | 23.2 |
| **Total Fees** | $29,085 | $45,600 | $0 | $2,240 | $8,120 |

**Support Staff Hours:**

| | Anthony Geritano | Candida Malferrari | Lee Ann Almeida | Tracy Fritz |
|---|---|---|---|---|
| Rate | $240 | $240 | $240 | $240 |
| Arbitration (Hours) | 0 | 0 | 0 | 0 |
| Petition to Vacate/Cross-Motion to Confirm (Hours) | 4.7 | 19.3 | 3.4 | 2 |
| Case Management Conference (Hours) | 0 | 0 | 0 | 0 |
| **Total Hours** | 4.7 | 19.3 | 3.4 | 2 |
| **Total Fees** | $1,128 | $4,632 | $816 | $480 |

**C.    Costs**

QuantumScape requests $2,309.95 in costs for legal research database fees and certain shipping, copying and printing, filing, and court reporter fees. QuantumScape contends that "[its] right to reimbursement of costs is vested by contract . . . and also reflected in Rule 54(d) of the Federal Rules of Civil Procedure." Mot. 7. Riley does not dispute that costs are permitted under the parties' agreements. Riley argues, however, that QuantumScape is not entitled to costs here because (1) QuantumScape waived its right to costs by failing to file a separate bill of costs as required by Civil Local Rule 54-1 and (2) the costs QuantumScape seeks are nontaxable. Opp'n 9. QuantumScape agrees that it seeks only nontaxable costs. Reply 5. QuantumScape argues that because its costs are nontaxable, it did not need to submit a bill of costs. *Id.*

Under Civil Local Rule 54-1 "a prevailing party claiming taxable costs must serve and file a bill of costs" within 14 days of entry of judgment. Civil L.R. 54-1(a). The Rule states that

14

"[a]ny party who fails to file a bill of costs within the time period provided by this rule will be deemed to have waived costs." Civil L.R. 54-1(c). Here, QuantumScape does not seek any taxable costs, and therefore had nothing to put on a bill of costs submitted under Rule 54-1(a). The issue is thus whether QuantumScape's failure to submit a blank bill of costs under Rule 54-1(a) bars QuantumScape from seeking nontaxable costs that the parties do not dispute are permitted under their contracts.

The Court finds that QuantumScape did not waive its right to seek nontaxable costs by failing to file a bill of costs. Rule 54-1(c) broadly states that any party who fails to file a bill of costs waives costs. Civil L.R. 54-1(c). But read together with Rule 54-1(a), which requires a bill of costs for *taxable* costs, it is clear that Rule 54-1(c) applies to parties who seek taxable costs that should have been listed on a bill of costs. The Court thus concludes that Rule 54-1(c) does not result in waiver here because QuantumScape seeks only nontaxable costs. Accordingly, the Court finds that QuantumScape is entitled the costs it requests.

### D. Post-Judgment Interest

QuantumScape requests post-judgment interest under 28 U.S.C. § 1961 on any attorney's fees and costs through the actual payment date. Mot. 1. Riley does not oppose this request. QuantumScape's request for post-judgment interest is therefore granted.

### E. Deferral of Enforcement

In his opposition, Riley asks the Court to stay under Federal Rule of Civil Procedure 62(h) "enforcement of the February 13, 2023 Order until at least 30 days after the date on which the Court enters its order on QuantumScape's request for attorneys' fees and costs." Opp'n 10. Riley seeks this relief because it "will give Riley an opportunity to know the total amount of the order before enforcement proceedings begin." *Id.* QuantumScape opposes the request, arguing that "there is no reason the [Riley] cannot begin satisfying the Judgment before knowing the final amount of additional fees and costs owed." Reply 5.

"Federal Rule of Civil Procedure 62(h) provides that when a court has entered final judgment, it may upon its discretion, 'stay enforcement of that judgment until the entering of a subsequent judgment or judgments.'" *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d

15

1  946, 955 (9th Cir. 2006) (quoting Fed. R. Civ. P. 62(h)).  The Court denies Riley's request for a
2  stay here.

### IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that QuantumScape's motion is GRANTED IN PART as follows:

1. QuantumScape is AWARDED $92,101 in attorneys' fees.
2. QuantumScape is AWARDED $2,309.95 in costs.
3. QuantumScape is AWARDED post-judgment interest on the attorney's fees and costs through the date of payment.

Dated:  August 15, 2023

_____
BETH LABSON FREEMAN
United States District Judge